Alfred J. Weiner, J.
In this proceeding, petitioner seeks to obtain the custody of his four children (Christopher, 15; Martin, 14; Regina, 12; and Orient, 10). Custody of the children was awarded to the respondent mother pursuant to the terms of a decree of divorce which was entered in January, 1973.
The children continuously resided with their mother in Suffolk County from the entry of the divorce decree until *823 October 12, 1975, when three of the four children came to Rockland County and resided with their father for a period of approximately three weeks. Thereafter, and during the course of this proceeding, they returned to their mother’s home pursuant to an order of the Supreme Court, Suffolk County, made and entered on November 3, 1975.
On November 17, 1975 this court granted to the petitioner a temporary order of custody for three of the children: Christopher, Regina and Orient. The fourth child, Martin has continuously resided with his mother and his custody was not changed by the aforesaid temporary order.
Extensive evidence adduced at the hearing indicated that, since the time of the divorce in 1973, Mrs. Coleman has had increasing difficulty in managing the three children, Christopher, Regina and Orient. Problems with Martin have been minimal. However, at this point, it should be noted that there has been, and continues to be, a severe rivalry between Martin and Christopher.
Respondent has admitted that she is uncertain that she can manage and supervise Christopher. Since the fall of 1974, Christopher has displayed violent behavior toward her and the other children which compelled Mrs. Coleman in 1975, to file a person in need of supervision (PINS) petition against him, in the Suffolk County Family Court.
Mrs. Coleman also acknowledged that during the past year Orient has frequently behaved in an erratic manner and that Regina has been unusually rebellious.
The increasingly difficult behavior of the three children reached a crisis stage for Mrs. Coleman in October, 1975, when she communicated with the petitioner and advised him that she could no longer cope with the children and that she was going to send them to him for a period of approximately two weeks.
Mr. Coleman’s parenting ability and his actions and attitudes these past few years have substantially contributed toward Mrs. Coleman’s inability to handle the three children. Prior to coming to live with Mr. Coleman, the three children, themselves, have been manipulative of both parents.
The three children, Christopher, Regina and Orient, want very much to live with their father and are extremely hostile and angry with their mother. Martin desires very much to stay with his mother and has a positive relationship with her.
*824 In a custody proceeding arising out of a dispute between divorced parents, the first and paramount concern of the court is and must be the welfare and the interests of the child. (Domestic Relations Law, § 70; Matter of Lincoln v Lincoln, 24 NY2d 270, 271-272; Finlay v Finlay, 240 NY 429, 433-434.)
Custody of children should be established on a long-term basis, wherever possible; children should not be shuttled back and forth between divorced parents merely because of changes in marital status, economic circumstances or improvements in moral or psychological adjustment, at least so long as the custodial parent has not been shown to be unfit, or perhaps less fit, to continue as the proper custodian. (Matter of Lang v Lang, 9 AD2d 401, 409, affd 7 NY2d 1029; see, also, Matter of Wout v Wout, 32 AD2d 709; Dintruff v McGreevy, 34 NY2d 887.)
Ancillary to the desire of New York courts to fix custody on a long-term basis, there is a strong reluctance to change custody except in circumstances which are critical to the child’s welfare. Unless the custodial parent can be shown to be unfit to continue custody, there being a real and immediate need to effect a change to preserve the welfare of the child, no change of custody will be directed. (Nierenberg v Nierenberg, 43 AD2d 717, affd 36 NY2d 850; Matter of Rodolfo "CC” v Susan "CC”, 37 AD2d 657; Matter of Kevin M. JJ v Alice A. JJ, 50 AD2d 959; see, also, Matter of Levitt v Kinori, 80 Misc 2d 557.)
The Court of Appeals has also stated that "[w]hile a child’s view should be considered to ascertain his attitude and to lead to relevant facts, it should not be determinative. If it were, then all a court would be required to decide is whether his preference of parent is voluntary and untainted and then follow the child’s wish. This would certainly not be conducive to the proper raising of children.” (Dintruff v McGreevy, 34 NY2d 887, 888.)
Under the assumption that it is beneficial for siblings to be reared together, courts should be reluctant to separate siblings unless the necessity for split custody is clearly demonstrated by the specific circumstances of the case. (Obey v Degling, 37 NY2d 768; People ex rel. Borella v Borella, 21 AD2d 871; Matter of Green, 25 AD2d 935; People ex rel. Moody v Moody, 36 AD2d 627; Matter of Lang v Lang, 9 AD2d 401, affd 7 NY2d 1029; Pact v Pact, 70 Misc 2d 100.)
When siblings are separated by a court, it has frequently *825 been determined that, in the best interests of children of sufficient age and understanding, their expressed wishes are not to be disregarded. (Pact v Pact, supra; People ex rel. Repetti v Repetti, 50 AD2d 913; Matter of Ebert v Ebert, 38 NY2d 700.)
The court finds that the circumstances have substantially changed since the divorce and particularly within the past year.
The attitudes of the children and the ability of respondent to cope with the children have taken significant turns for the worse. Respondent has been unable to function adequately as a custodial parent to the point where she is now currently unfit to care for these three children. By this statement, this court does not intend to imply that she is an incompetent person, nor does it intend to imply that she does not love or have concern for her children, but it is very evident to this court that respondent at this time cannot properly meet the emotional demands and needs of Christopher, Regina and Orient.
Respondent, however, can and always has been adequately able to meet the emotional needs of her son Martin.
As to Martin there has been no change of circumstances since the entry of the divorce decree and the original order of custody and there is absolutely no current basis for making a change of custody as to this child.
The court finds that the substantial turmoil, anxiety, anger and bitterness that the children evidenced and which existed while they lived with their mother has subsided since they have resided with their father. The children at the present time are significantly calmer and they appear to have made a good adjustment to petitioner’s home where he resides with his wife and stepdaughter. The children have further made a good adjustment to the school and community and are functioning on a much better basis than they were while residing in their mother’s home. The three children also express warm feelings toward their father and their stepmother.
There is no doubt that these four children have been emotionally damaged over a long period of time by the continuous conflict between their parents while they were living together as husband and wife and since their separation and divorce. The three children, Christopher, Orient and Regina, continue to be extremely hostile and angry towards their mother.
*826 The court further finds that, independent of their feelings, if the three children are returned to the home of their mother, the effect upon them will be extremely detrimental to their future emotional growth and well-being.
"Unlike adults, whose psychic functioning proceeds on more or less fixed lines, children change constantly, from one state of growth to another. They change with regard to their understanding of events, their tolerance for frustration, and their needs for the demands on motherly and fatherly care for support, stimulation, guidance, and restraint. These demands vary as the child matures and begins to need independence, i.e., gradual freedom from control. Since none of the child’s needs remains stable, what serves his developmental interests on one level may be detrimental to his progression on another”. (Goldsmith, Freud and Solnit, Beyond the Best Interests of the Child [1973], p 11.)
"Unlike adults, who are generally better able to deal with the vagaries of life via reason and intellect, children are governed in much of their functioning by the irrational parts of their minds, i.e., their primitive wishes and impulses. Consequently, they respond to any threat to their emotional security with fantastic anxieties, denial, or distortion of reality, reversal or displacement of feelings-reactions which are no help for coping, but rather put them at the mercy of events.” (Goldsmith, supra, p 12.)
This court recognizes that it is usually not in the children’s best interest to separate siblings.
However, because of the particular needs of these children and the severe rivalry between Martin and Christopher, it will be most harmful to all of the children if they were united and forced to live in the same home.
The court, therefore, finds that it is in the best interest of Christopher, Regina and Orient to be in the custody of their father and it is the best interest of the child, Martin, to be in the custody of their mother.